The STATE of Texas, Appellant,

v.

Rita McGEORGE, Individually and as
Guardian of Charles McGeorge, Jr., and
Nancy Simms as Guardian of Joy Lynn
McGeorge, Appellees.

No. 14–94–01064–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 2, 1996.

Rehearing Overruled July 3, 1996.

Danica Lynn Milios, Austin, for appellant.

Pete T. Patterson, Houston, for appellees.

## MAJORITY OPINION

EDELMAN, Justice.

In this personal injury and wrongful death action, the State of Texas appeals the interlocutory denial of its motion for summary judgment on the ground that the appellees'

action is barred by sovereign immunity. We reverse the interlocutory order of the trial court and render judgment for the State.

While on duty in the early morning of June 18, 1988, Sergeant Kenneth W. Tuck, Jr. of the Texas Department of Public Safety ("DPS") pulled over a vehicle driven by Juan Vasquez which had been weaving back and forth across the yellow line of a highway. However, when Tuck approached the vehicle and asked Vasquez to step out, Vasquez sped away. During the high-speed pursuit which followed, Vasquez lost control, drove into a lane of oncoming traffic, and collided with a vehicle driven by Charles McGeorge, Sr. In the collision, Mr. McGeorge was killed and his passengers, Rita McGeorge and Charles McGeorge, Jr., were seriously injured.

Rita McGeorge, individually and as guardian of Charles McGeorge, Jr., and Nancy Simms, as guardian of Joy Lynn McGeorge, the minor daughter of Charles McGeorge, Sr. (collectively, the "McGeorges"), filed suit against the State of Texas under the Texas Tort Claims Act[1] (the "Act"). The McGeorges alleged that the State, through Officer Tuck, was negligent in conducting the high-speed chase which resulted in the accident. The State moved for summary judgment on the affirmative defense of sovereign immunity arising from the alleged official immunity of Officer Tuck, but that motion was denied by the trial court.

## Jurisdiction

■ An appeal may ordinarily be taken only from a final judgment. *City of Houston v. Kilburn,* 849 S.W.2d 810, 811 (Tex.1993). However, a "person" may appeal an interlocutory order denying a motion for summary judgment where the motion is based on "an assertion of immunity by an individual who is an officer or employee of the state...." Tex.Civ.Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1996). In this context, the term "person" includes governmental entities. *Kilburn,* 849 S.W.2d at 811. Moreover,

the phrase "assertion of immunity by an individual who is an officer or employee of the state" is satisfied where a claim of immunity by a governmental entity in its motion for summary judgment is based on an assertion of official immunity[2] of an employee, even where, as here, the employee is neither a movant for summary judgment or even a party to the suit. *See City of Beverly Hills v. Guevara,* 904 S.W.2d 655, 656 (Tex.1995). Therefore, based on *Guevara,* we have jurisdiction to consider the State's appeal, and proceed to review the denial of the summary judgment on the merits.

## Summary Judgment

In a single point of error, the State contends that the trial court erred in denying its motion for summary judgment because the McGeorges' claim is barred by sovereign immunity.

■ The denial of a summary judgment is reviewed by the same standard as the granting of one. *Harris County v. Ochoa,* 881 S.W.2d 884, 886 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). In reviewing a summary judgment, the nonmovant's evidence is accepted as true, and every reasonable inference is indulged and all doubts are resolved in the nonmovant's favor. *Id.*

■ Under the doctrine of sovereign immunity, the state is not liable for the torts of its agents or officers unless there is a constitutional or statutory waiver of immunity. *Mount Pleasant Indep. Sch. Dist. v. Estate*

---

1. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001–101.009 (Vernon 1986 and Supp.1996).

2. "Official immunity" and "qualified immunity" are two of several terms used to refer to an affirmative defense available to governmental employees sued in their individual capacities. *See City of Houston v. Kilburn,* 849 S.W.2d 810, 812 n. 1 (Tex.1993).

*of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989). The limited waiver of sovereign immunity is set forth in Section 101.021 of the Act.[3] *De-Witt v. Harris County,* 904 S.W.2d 650, 652 (Tex.1995).

 Sovereign immunity protects governmental entities from liability whereas official (or qualified) immunity protects individual governmental employees therefrom. *Id.* at 653. Governmental employees are protected by official immunity when they perform discretionary functions in good faith and within their authority. *Id.* at 652. Moreover, where a governmental employee has no liability because of official immunity, the governmental entity by which he is employed is not liable under Section 101.021 of the Act for that employee's negligence. *Id.* at 653–54.

 In this case, the State contends that it is immune from liability because Officer Tuck is protected by official immunity. As to the elements of official immunity, the McGeorges concede that Officer Tuck was performing a discretionary function and acting within his authority, but argue that the element of "good faith" was not proved as a matter of law.

 "[A]n officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994) (footnote omitted). The "could have believed" aspect of the test means that, in order to be entitled to summary judgment, the officer or government must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. *Id.* at 656–57. It does not require proof that it would have been unreasonable to stop the pursuit. *Id.* at 657. Nor does it require proof that all reasonably prudent officers would have continued the pursuit. *Id.*[4]

 A nonmovant seeking to defeat a claim of official immunity in a motion for summary judgment has an elevated standard of proof. *Id.* at 656. To controvert proof of good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit. *Id.* at 657. Instead, "the plaintiff must show that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* In this regard, the court must consider the rights of bystanders or other innocent parties if an officer acts in gross disregard of public safety. *Id.* at 656. Importantly, on the other hand, if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Id.* at 657 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

In this case, the evidence presented in support of the summary judgment motion and response included the affidavit and/or deposition testimony of (1) Officer Tuck, (2) Sergeant Terry Welch, the officer riding with Tuck at the time of the incident, (3) Albert Rodriguez, Commander of the DPS Training Academy, and (4) James Dean, a wrecker driver who allegedly witnessed the pursuit. In addition, the McGeorges claim that they offered and the trial court allowed the testimony of Randy Dodd, a former police officer and instructor at the Houston Police Academy.

---

3. Section 101.021 of the Act, entitled "Governmental Liability," provides:

 A governmental unit in the state is liable for:
 (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:
 (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

 (B) the employee would be personally liable to the claimant according to Texas law; and
 (2) personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
 TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

4. The subjective good faith of the officer is not a factor in determining the element of good faith for this purpose.

Officer Tuck stated, among other things, that he pursued the Vasquez vehicle because he believed the manner in which Vasquez was driving posed a significant risk to the public. Tuck further stated that his speed during the chase got up to 70 miles per hour, but slowed to 30–40 miles per hour at intersections. Tuck also stated that he had his emergency lights and siren on during the pursuit, that he did not go through an intersection until it was safe to do so, and that he did not go as fast as he could have to keep up with Vasquez because of the increased risk to the public.

Officer Welch stated, among other things, that Officer Tuck's actions in this incident were reasonable in light of circumstances, and that any reasonable officer would have acted similarly under the circumstances.

Dean stated, among other things, that, driving 67–70 miles per hour, he had been unable to keep up with the chase; that he estimated the suspect vehicle and police vehicle were traveling 90–95 miles per hour; that the speed limit on the road was 35 miles per hour and traffic was heavy; and that the police vehicle did not reduce its speed below 65 miles per hour as it went through intersections.

Commander Rodriguez stated, among other things, that, even assuming the facts stated by Dean, a reasonably prudent officer under the same or similar circumstances could have believed that the need to apprehend the suspect outweighed a potential risk of harm to the public in continuing the pursuit.

The State thus offered summary judgment evidence that a reasonably prudent officer under the circumstances could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. However, the McGeorges argue that a fact issue was raised by the conflicting fact evidence offered by Dean and the conflicting expert evidence offered by Officer Dodd.

According to the McGeorges, Officer Dodd testified that Officer Tuck's actions were not reasonable, and that no reasonable person in the same or similar circumstances could have believed that the need to apprehend the suspect outweighed the danger to the public. However, in support of this proposition, the McGeorges cite only the following deposition testimony:

Q. Officer Dodd, could a reasonably prudent officer, under the same or similar circumstances as Officer Tuck on June 19th, 1988, believe that the need to apprehend Mr. Vasquez outweighed the clear risk of harm to the public in continuing that pursuit?

A. I don't believe so. I think it would be more dangerous to chase him than to let him go.

This deposition excerpt did not recite the facts or reasoning on which the conclusion was based [5] and was not referenced to the record on appeal. It is thus questionable whether this evidence was sufficient to raise a fact issue even under ordinary summary judgment standards.

Moreover, under the elevated standard set forth in *Chambers,* the non-movant's evidence must not merely show that *an expert* considers the officer's actions unreasonable, but that *no reasonable person* in the officer's position could consider them reasonable. From the cited deposition testimony, it is not clear that Officer Dodd stated such an opinion. With or without such an expert opinion, however, in order for the elevated standard to indeed *be* an elevated standard, we believe that the facts in evidence must fairly support the conclusion that no reasonable person in the officer's position could have thought that the facts justified his actions.[6]

---

5. *See, e.g., Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (holding that expert opinion which did not state its basis or reasoning was conclusory and thus incompetent summary judgment evidence).

6. Otherwise, if a particular expert believes, for example, that pursuits are so dangerous that no reasonable person could *ever* think they are justi-fied, his opinion that no reasonable person in the officer's position could have thought the facts justified his actions could arguably defeat summary judgment in *any* case, whether or not the facts of a particular case fairly support that conclusion. This would render the elevated standard ineffective.

In this context, it is obvious that every high speed chase presents considerable risk of collision and injury, and this risk increases the longer the pursuit lasts. Moreover, to the extent that a driver may be intoxicated or otherwise impaired, as was suspected of Vasquez, the risk of collision and injury from pursuit is even greater. In addition, as a practical matter, although an officer does not *force* a suspect to flee, drive recklessly, or lose control, pursuit may increase the likelihood that a suspect will do so. On the other hand, refraining from pursuing drivers suspected of being intoxicated or committing other violations arguably encourages suspects to flee and reduces the deterrent effect of apprehension. Moreover, the fact that a suspect elects to flee raises suspicion of more serious criminal activity. Nor can a law enforcement officer know when commencing a pursuit how far or fast the suspect will go. These considerations are common to pursuit situations and, thus, do not alone dictate the reasonableness of an officer's actions in a particular case.

In this case, the McGeorges offered evidence that Officer Tuck drove 90–95 miles per hour in heavy traffic in a 35 mile per hour zone. In addition, no evidence was cited that Officer Tuck or DPS attempted to use any less dangerous measures to stop Vasquez. However, it is undisputed that Officer Tuck conducted the pursuit with his emergency lights and sirens on, and, despite his speed, there was no evidence that *he* lost control of his vehicle or had any near collisions. Based on these facts, we believe that reasonable minds could differ on whether Officer Tuck acted in gross disregard for public safety, and, thus, that the evidence failed to show that no reasonable person in Officer Tuck's position could have thought the facts justified his actions. Because the evidence did not thereby meet the elevated standard of proof needed to defeat the State's motion for summary judgment, we reverse the trial court's interlocutory order denying summary judgment and render judgment in favor of the State.

LEE, Justice, dissenting.

I do not believe that the supreme court's decision in *City of Lancaster v. Chambers,*

883 S.W.2d 650 (Tex.1993) abrogates Texas summary judgment practice in suits brought against the state to the extent adopted by the majority. The majority conducts its own evidentiary review and because it does not agree with the trial court's findings, it reverses and renders judgment for the state. I do not believe that the supreme court intended an appellate court, to sit as a "super factfinder" in these particular summary judgment cases. Accordingly, I disagree with the majority's analysis and note my dissent.

The majority reviews the summary judgment proof submitted by the parties without the aid of the presumptions that are routinely applied to motions for summary judgments. Admittedly, *Chambers* raises the burden on a plaintiff who brings suit for injuries sustained from a police chase.

> [T]he plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that "no reasonable person in the [officer's] position could have thought the facts were such that they justified [the officer's] acts."

*Chambers,* 883 S.W.2d at 657.

The burden of proof announced in *Chambers,* however, should not be confused with the standard of review on appeal. Several courts of appeals have addressed appeals of summary judgments in official immunity cases and have not interpreted *Chambers* to abrogate the standard of appellate review to be employed in official immunity summary judgment cases. *See, e.g., Gallia v. Schreiber,* 907 S.W.2d 864, 869–70 (Tex.App.—Houston [1st Dist.] 1995, no writ) (finding that plaintiff failed to present **any** summary judgment proof which refuted that officer acted in good faith); *Richardson v. Parker* 903 S.W.2d 801, 805–06 (Tex.App.—Dallas 1995, no writ) (holding that constable should have been granted summary judgment because he presented evidence of good faith and plaintiff's response only included conclusory statements and did not include **any** evidence that "no reasonably prudent officer would have taken the same action"); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ) (concluding

there was proof of good faith because the officer presented evidence of good faith and plaintiff's summary judgment proof did not address reasonableness of officer's action); *Rhodes v. Torres,* 901 S.W.2d 794, 799–800 (Tex.App.—Houston [14th Dist.] 1995, no writ) (finding that officer presented summary judgment proof of good faith and determining that there was **no** evidence that officer did not act in good faith); *Cameron County v. Alvarado,* 900 S.W.2d 874, 880–81 (Tex. App.—Corpus Christi 1995, writ dism'd w.o.j.) (holding that summary judgment was properly denied because officer did not offer **any** proof that he acted as a reasonably prudent officer); *Victory v. Bills,* 897 S.W.2d 506, 509 (Tex.App.—El Paso 1995, no writ) (holding that summary judgment was properly denied because parties presented affidavits squarely opposing each other); *see also Dear v. City of Irving,* 902 S.W.2d 731, 738–39 (Tex.App.—Austin 1995, writ denied); *Johnson v. Sandel,* 895 S.W.2d 490, 491–92 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (O'Connor, J. concurring). In fact, *Chambers* appears to indicate that the standard of review is not changed in conjunction with the heightened burden of proof. *See Chambers,* 883 S.W.2d at 657 (stating that summary judgments will be harder for the state to obtain in Texas courts than in federal courts because of the differences in summary judgment practices).

It is well settled that in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and all reasonable inferences must be indulged in favor of the non-movant. The majority, after finding the material facts underlying the determination of good faith are in dispute, has instead indulged reasonable inferences in favor of the *state, the movant.* As I believe the majority opinion is contrary to accepted summary judgment review, I dissent.